KAREN T. TSUI (SBN 305869)
KTsui@maynardnexsen.com
MAYNARD NEXSEN LLP
10100 Santa Monica Boulevard, Ste. 550
Los Angeles, CA 90067
Telephone: 310.596.4500

Attorneys for Defendants
Cigna Health and Life Insurance Company and Cigna Healthcare of California, Inc.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| COUNTY OF RIVERSIDE on behalf of RIVERSIDE UNIVERSITY HEALTH SYSTEM,<br><br>Plaintiff,<br><br>vs.<br><br>CIGNA HEALTH AND LIFE INSURANCE COMPANY, a Connecticut Corporation; CIGNA HEALTHCARE OF CALIFORNIA, a California Corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:24-cv-10793-SPG (MARx)<br><br>**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**<br><br>Hearing:<br>Date: April 16, 2025<br>Time: 1:30 p.m.<br>Courtroom: 5C<br>Judge: Sherilyn Peace Garnett |

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. ARGUMENT ..... 2

A. PLAINTIFF'S CLAIMS COULD HAVE BEEN ASSERTED AS ERISA CLAIMS. ..... 3

1. PLAINTIFF HAS STANDING TO ASSERT ERISA CLAIMS BOTH DERIVATIVELY, AS ASSIGNEE OF ITS PATIENTS, AND DIRECTLY, AS A BENEFICIARY UNDER ONE OF THE PLANS. ..... 3

2. PLAINTIFF'S CLAIMS FALL WITHIN THE SCOPE OF § 1132(A). ..... 4

B. PLAINTIFF'S CLAIMS ARE NOT INDEPENDENT OF THE UNDERLYING ERISA PLANS. ..... 6

C. PLAINTIFF'S MOTION TO REMAND DOES NOT PROVIDE ANY BASIS TO FIND OTHERWISE. ..... 9

D. PLAINTIFF'S EXPRESS-PREEMPTION ARGUMENT IS BOTH WRONG AND IRRELEVANT TO ITS REMAND MOTION. ..... 13

III. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

Page(s)

Cases

*Aetna Health Inc. v. Davila*,
542 U.S. 200 (2004) .................................................. Passim

*Bast v. Prudential Insurance Company of America*,
150 F.3d 1003 (9th Cir. 1998) .................................................. 14

*Bell v. Blue Cross of California*,
131 Cal. App. 4th 211 (2005) .................................................. 12

*Blue Cross of California v. Anesthesia Care Assocs. Med. Grp., Inc.*,
187 F.3d 1045 (9th Cir. 1999) .................................................. 6

*Bristol SL Holdings, Inc. v. Cigna Health & Life Ins. Co.*,
103 F.4th 597 (9th Cir. 2024) .................................................. Passim

*Catholic Healthcare West-Bay Area v. Seafarers Health & Benefits Plan*,
321 F. App'x 563 (9th Cir. 2008) .................................................. 9, 10

*Cleghorn v. Blue Shield of California*,
408 F.3d 1222 (9th Cir. 2005) .................................................. Passim

*Dedicato Treatment Ctr., Inc. v. Aetna Life Ins. Co.*,
2024 WL 3346241 (C.D. Cal. July 8, 2024) .................................................. 14

*Fossen v. Blue Cross & Blue Shield of Montana, Inc.*,
660 F.3d 1102 (9th Cir. 2011) .................................................. 2, 10, 11, 12

*Hoag Mem'l Hosp. v. Managed Care Administrators*,
820 F. Supp. 1232 (C.D. Cal. 1993) .................................................. 13

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
903 F. Supp. 2d 880 (C.D. Cal. 2012) .................................................. 8

*Leonard v. MetLife Ins. Co.*,
2013 WL 12210177 (C.D. Cal. Feb. 25, 2013) .................................................. 8

*Lodi Mem'l Hosp. Ass'n v. Tiger Lines, LLC*,
2015 WL 5009093 (E.D. Cal. Aug. 20, 2015) .......... 4, 8

*Maglica v. Maglica*,
66 Cal. App. 4th 442 (1998) .......... 7

*Marin General Hosp. v. Modesto & Empire Traction Co.*,
581 F.3d 941 (9th Cir. 2009) .......... 9, 11, 12, 13

*McIlwain v. Brown*,
2020 WL 11232927 (C.D. Cal. Mar. 24, 2020) .......... 12

*Melamed v. Blue Cross of California*,
557 F. App'x 659 (9th Cir. 2014) .......... 9

*Melamed v. Blue Cross of California*,
2011 WL 3585980 (C.D. Cal. Aug. 16, 2011) .......... 3, 4, 10

*Memorial Hospital System v. Northbrook Life Insurance Co.*,
904 F.2d 236 (5th Cir. 1990) .......... 13, 15

*Metropolitan Life Ins. Co. v. Taylor*,
481 U.S. 58 (1987) .......... 2

*Misic v. Bldg. Serv. Emps. Health & Welfare Tr.*,
789 F.2d 1374 (9th Cir. 1986) .......... 3, 4

*Peterson v. Am. Life & Health Ins. Co.*,
48 F.3d 404 (9th Cir. 1995) .......... 4

*Samaan v. Anthem Blue Cross Life & Health Ins. Co.*,
2021 WL 2792307 (C.D. Cal. Mar. 10, 2021) .......... 7, 11

*The Meadows v. Employers Health Ins.*,
47 F.3d 1006 (9th Cir. 1995) .......... 10

*UNUM Life Ins. Co. of Am. v. Ward*,
526 U.S. 358 (1999) .......... 6

Statutes

29 U.S.C. § 1002(7), (8)....................3
29 U.S.C. § 1132(a)....................1, 3, 4, 6
29 U.S.C. § 1144(a)....................13
Cal. Bus. & Prof. Code § 17200 ....................5, 10
Cal. Health & Safety Code § 1371.4(b)....................8
Cal. Health and Safety Code § 1371.4....................6, 7, 8
Cal. Ins. Code § 10112.7(a) ....................8
Cal. Insurance Code § 10112.7 ....................6

# I. INTRODUCTION

Defendants Cigna Health and Life Insurance Company and Cigna Healthcare of California, Inc. ("Cigna") removed this case to this Court based on complete preemption by the Employee Retirement Income Security Act ("ERISA"). Such preemption creates an exception to the "well pleaded complaint" rule's reliance on the state-law nature of a complaint by automatically converting state-law claims that fall within the scope of the ERISA enforcement mechanism in ERISA § 502(a), codified as 29 U.S.C. § 1132(a), into federal ERISA claims that may be removed. Plaintiff's claims here fall squarely within that scope.

As an initial matter, all the claims at issue in this case involve patients covered under ERISA-governed plans (the "Plans"). (*See* doc. 1-1 at 2 (¶ 5) ("According to Defendants' records, the patients at issue in the lawsuit were each enrolled in group health benefit plans that are governed by [ERISA]."); doc. 1-1 at 4-1109 (showing that the plans are employer-sponsored and reference ERISA)). Plaintiff has not disputed that ERISA applies to the Plans. Because the claims at issue involve ERISA plans, the causes of action are completely preempted if they could have been asserted under ERISA and are not entirely independent of the Plans.

Plaintiff could have asserted its claims in this case under ERISA. First, it submitted all of the claims for payment at issue to Cigna under assignments, and it is a direct beneficiary of one of the plans. Declaration of Pamela Ley ("Ley Decl."), at ¶¶ 5-6; doc. 1-1 at 647. This gave Plaintiff standing to assert ERISA claims both derivatively on behalf of its patients and directly on behalf of itself as to the relevant claims. Second, Plaintiff's claims derive entirely from ERISA Plan administration and Cigna's obligations under the Plans, and it could have asserted ERISA claims to remedy alleged improper claims handling or to enforce any state statutes that might apply to ERISA plans. For similar reasons, these claims are not entirely independent of the underlying Plans, as they only exist due to the defendant's administration of ERISA-regulated plans.

Lastly, although it has nothing to do with this Court's jurisdiction, Plaintiff is wrong that its claims are not preempted under ERISA's express-preemption provision. The three-decade-old case law Plaintiff cites notwithstanding, the Ninth Circuit and this Court have recently applied recent U.S. Supreme Court and Ninth Circuit authority to find that claims arising from claim administration are preempted under ERISA's express-preemption provision.

Because Plaintiff's claims are completely preempted, this Court has subject matter jurisdiction over this case, and Plaintiff's motion to remand should be denied.

## II. ARGUMENT

Despite Plaintiff's assertion of state-law claims, the complete-preemption doctrine "converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Aetna Health Inc. v. Davila,* 542 U.S. 200, 209 (2004) (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65-66 (1987)).[1] In *Davila*, the United States Supreme Court stated that "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Id.* The Court also set out the following test for when state-law claims fall within the ERISA enforcement mechanism:

> [I]f an individual, at some point in time, could have brought his claim under [the ERISA enforcement mechanism], and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by [the ERISA enforcement mechanism].

*Davila*, 542 U.S. at 210; *Fossen v. Blue Cross & Blue Shield of Montana, Inc.*, 660 F.3d 1102, 1108 (9th Cir. 2011) (holding that the complete-preemption doctrine applies to

---

[1] Cigna has never asserted that Plaintiff expressly alleged federal claims or that the Court has independent diversity jurisdiction over the claims at issue, so there is little to discuss in Plaintiff's Sections III.A. and III.B. (Doc. 19 at 9-10). Instead, Cigna has alleged that this Court has jurisdiction under its federal question jurisdiction pursuant to the complete-preemption doctrine. (Doc. 1).

all parts of the ERISA enforcement mechanism in § 1132(a)). The question is not whether the claims are identical to the asserted state-law claims but whether the facts alleged fall within the scope of any ERISA claim available under § 1132(a). *See Davila*, 542 at 209, 214; *Cleghorn v. Blue Shield of California*, 408 F.3d 1222, 1225 (9th Cir. 2005). The claims here fall within that scope.

**A. Plaintiff's claims could have been asserted as ERISA claims.**

Under the first prong of the *Davila* analysis, the question is whether the plaintiff *could have* brought its claims under ERISA. Here, this question has two parts: does Plaintiff have standing to assert ERISA claims under § 1132(a), and does it assert claims within the scope of ERISA § 1132(a). The answer to both is "yes."

**1. Plaintiff has standing to assert ERISA claims both derivatively, as assignee of its patients, and directly, as a beneficiary under one of the Plans.**

Section 1132(a) limits proper plaintiffs to, in relevant part, "participants" and "beneficiaries." 29 U.S.C. § 1132(a). The former is "any employee . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan . . . , or whose beneficiaries may be eligible to receive any such benefit," and the latter is any individual or entity "designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(7), (8). A provider with an assignment can step into the shoes of its patients and take on their status as a "participant" or "beneficiary." *See Misic v. Bldg. Serv. Emps. Health & Welfare Tr.*, 789 F.2d 1374, 1379 (9th Cir. 1986). And the existence of the assignment meets the first prong of the *Davila* analysis. *Melamed v. Blue Cross of California*, No. CV 11-4540 PSG FFMX, 2011 WL 3585980, at *7 (C.D. Cal. Aug. 16, 2011) (holding that "[t]he fact that Plaintiffs do not depend on being assignees of their patients' plan benefits is of no consequence, because, admittedly, Plaintiffs *could have* brought their claims as assignees under ERISA with respect to certain patients").

Further, where an ERISA plan provides that it will pay providers directly, they become "beneficiaries" under the Plan. *See Melamed*, No. CV 11-4540 PSG FFMX,

2011 WL 3585980, at *6 (noting that "'beneficiary' means 'any person designated to receive benefits from a policy that is part of an ERISA plan' by the terms of the plan itself or by a participant" and holding that providers were "beneficiaries" because the ERISA plans provided that they would pay providers for emergency services) (quoting *Peterson v. Am. Life & Health Ins. Co.*, 48 F.3d 404, 409 (9th Cir. 1995)).

Plaintiff attempted to plead around this by stating in its Complaint that it does not seek "to enforce the contractual rights" of its patients (doc. 1-2 at 6 (¶ 8)) and by not "set[ting] forth any factual allegation that [Plaintiff] obtained an assignment of benefits from the Patient" (doc. 19 at 12), but Plaintiff cannot avoid ERISA preemption with clever pleading. First, in response to a motion to remand's challenge to the Court's jurisdiction, the Court can consider evidence outside the pleading. *See Lodi Mem'l Hosp. Ass'n v. Tiger Lines, LLC*, No. 2:15-CV-00319-MCE, 2015 WL 5009093, at *5 (E.D. Cal. Aug. 20, 2015). Plaintiff's failure to allege that it obtained assignments does not change the fact that it submitted all the claims at issue pursuant to assignments. Ley Decl., ¶ 5-6, Exhibit 1. Second, the question is not whether Plaintiff *did* assert ERISA claims, but whether it "*could* have brought [its] claim" under the ERISA enforcement mechanism. *Davila*, 542 U.S. at 210 (emphasis added). Based on the assignments, Plaintiff stepped into the shoes of the patients, including their status as participants and beneficiaries, and it had standing to assert ERISA claims. *See Misic*, 789 F.2d at 1379. Moreover, under the FFF Enterprises, Inc. Plan, Plaintiff (as an alleged provider of emergency services) is a direct "beneficiary" under that plan. (*See* doc. 1-1 at 647 ("The Healthplan shall reimburse providers for emergency services and care provided to its enrollees, until the care results in stabilization of the enrollee."); doc. 1-2 at 11 (¶¶ 27-28)). Plaintiff could have asserted ERISA claims both directly and derivatively. *See Melamed*, No. CV 11-4540 PSG FFMX, 2011 WL 3585980, at *6-7.

### 2. Plaintiff's claims fall within the scope of § 1132(a).

Plaintiff asserts five different state-law causes of action in this case, all of which derive from Cigna's administration of the ERISA Plans and seek to remedy alleged

actions or statements during pre-service claims handling that Plaintiff asserts entitled it to certain payment amounts (First Cause of Action for Breach of Implied-In-Fact Contract and the Fourth and Fifth Causes of Action for *Quantum Meruit*/Quasi-Contract), alleged failure to comply with state law on reimbursements to emergency providers (Second Cause of Action for Breach of Implied-in-Law Contract), and allegedly improper claims handling (Third Cause of Action for Unfair Business Practices under CAL. BUS. & PROF. CODE § 17200 ("UCL")). (*See* doc. 1-2 at 13-19 (¶¶ 37-80)). All of these claims arise out of Cigna's administration of claims under ERISA Plans and could be remedied with ERISA claims.

In the first, fourth, and fifth causes of action, Plaintiff essentially alleges that, through statements or actions in the pre-service claims handling, Cigna took on obligations to pay specific amounts for the ERISA claims at issue and either failed to pay those amounts or failed to pay any benefits at all. (*See, e.g.*, doc. 1-2 at 13 (¶¶ 39-45) (alleging obligations based on "conduct" during post-stabilization pre-service communications and subsequent "partial payment on some of the claims")). Although Plaintiff alleges these claims in terms of independent state-law obligations, they are essentially claims for benefits under an ERISA Plan or to remedy alleged misleading representations about what the Plans would pay. (*See* doc. 1-2 at 13 (¶ 39) (alleging communications with Cigna about eligibility and benefits under the Plans and how much would be paid for those services), 18 (¶¶ 67, 71) (alleging communications with Cigna about eligibility and benefits under the Plans and an obligation to pay based on Cigna's "obligat[ion] to pay for and/or provide" medical care for the patients at issue under the Plans), 19 (¶ 77) (alleging an obligation to pay based on Cigna's "obligat[ion] to provide or arrange" medical care for the patients at issue under the Plans)).

In addition, Plaintiff's claims based on alleged obligations to pay certain amounts and in certain ways under state law are essentially assertions that those statutes apply to the administration of ERISA plans, which, if true, would simply make them the "relevant rule[s] of decision in [Plaintiff's] § [1132](a) action." *UNUM Life Ins. Co. of*

*Am. v. Ward*, 526 U.S. 358, 377 (1999). In other words, assuming CAL. HEALTH AND SAFETY CODE § 1371.4 and CAL. INSURANCE CODE § 10112.7 apply in the context of ERISA plans, they would be enforceable under an ERISA § 1132(a) claim as the benefits due under the Plan, meaning that Plaintiff's attempts to enforce them with state law fall within the scope of the ERISA enforcement mechanism. *See Cleghorn*, 408 F.3d at 1227 (declining to decide whether § 1371.4 applied to ERISA plans but holding that the attempt to enforce it against an ERISA plan by way of a lawsuit asserting state-law causes of action based on denial of ERISA plan benefits was completely preempted). Plaintiff's claims are premised on the underpayment, nonpayment, and delay in payment of ERISA Plan benefits. (*See, e.g.*, doc. 1-2 at 12 (¶ 35), 15 (¶ 55), 16 (¶ 60(ii)-(v))). Plaintiff's claims could have been asserted as ERISA claims.

**B. Plaintiff's claims are not independent of the underlying ERISA plans.**

The second prong of the *Davila* analysis asks whether there is an "independent legal duty" underlying the claims. This question has nothing to do with there simply being some state-law source for the alleged legal duty, but that the legal duty arises independently from the ERISA plan. *See Davila*, 542 U.S. at 214 (holding that obligations under state law were not "entirely independent of the federally regulated contract itself" where they only exist due to the defendant's administration of an ERISA-regulated plan); *Bristol SL Holdings, Inc. v. Cigna Health & Life Ins. Co.*, 103 F.4th 597, 606 (9th Cir. 2024) (explaining that "'independent state law claims' means claims 'independent' of an ERISA plan, not claims arising from an 'independent' source of law").

Plaintiff's claims for implied-in-fact contract, *quantum meruit*, and quasi-contract are not separate and independent obligations from the ERISA plans. A claim on an express contract between an insurer and a provider might in some cases be separate from the ERISA plan. *See Blue Cross of California v. Anesthesia Care Assocs. Med. Grp., Inc.*, 187 F.3d 1045, 1049 (9th Cir. 1999) (holding that claims based on written provider agreements encompassing all (ERISA and non-ERISA) claims

alleging that the insurer had improperly amended the fee schedules under those contracts were not completely preempted by ERISA). But that is not the case here. Plaintiff does not allege the existence of an express contract between Cigna and Plaintiff; it alleges a contract "manifested in conduct rather than expressed in words." *Maglica v. Maglica*, 66 Cal. App. 4th 442, 455 (1998). The conduct in question is Cigna's administration of the Plans—namely, verification of benefits, giving prior approval, "failure to respond," failure to arrange transfer, and simply being the claim administrator or insurer—which, Plaintiff contends, "gave rise to implied-in-fact agreements." (*See* doc. 1-2 at 12 (¶ 29), 13 (¶¶ 38-41)). The *quantum meruit* and quasi-contract counts also rely on Plaintiff's alleged eligibility and benefit verification calls to Cigna as part of ERISA claim administration to imply an obligation to pay for services outside of the Plans, regardless of the terms of the Plan. (*See id.* at 17-18 (¶¶ 67-72)). Claims are not "entirely independent of the federally regulated contract" where they only exist due to the defendant's administration of an ERISA-regulated plan. *Davila*, 542 U.S. at 214.

Further, Plaintiff's claims based on California statutes requiring certain administration or payments by plans or insurer have both been expressly held to be completely preempted by ERISA. For example, in *Cleghorn v. Blue Shield of California*, 408 F.3d 1222 (9th Cir. 2005), the Ninth Circuit held that a participant's claims attempting to apply CAL. HEALTH AND SAFETY CODE § 1371.4 to an insurer through the UCL were completely preempted because, regardless of whether the underlying statute applied to ERISA plans, "it may not be enforced against an ERISA plan by way of this lawsuit asserting state-law causes of action against [the insurer] because of its denial of ERISA plan benefits." *Id.* at 1227. As the *Cleghorn* court further explained, "[a]ny duty or liability that [the insurer] had to reimburse [the plaintiff] would exist here only because of [the insurer's] administration of ERISA-regulated benefit plans." *Id.* at 1226. *See also Samaan v. Anthem Blue Cross Life & Health Ins. Co.*, No. CV 20-4332-DMG (GJSX), 2021 WL 2792307, at *4 (C.D. Cal. Mar. 10,

2021) (dismissing provider's UCL claims as completely preempted to the extent they involved ERISA plans); *Lodi Mem'l Hosp. Ass'n v. Tiger Lines, LLC*, No. 2:15-CV-00319-MCE, 2015 WL 5009093, at *7 (E.D. Cal. Aug. 20, 2015) (dismissing a provider's UCL claims premised on § 1371.4 as completely preempted); *Leonard v. MetLife Ins. Co.*, No. 2:12-CV-10003-SVW-SS, 2013 WL 12210177, at *6 (C.D. Cal. Feb. 25, 2013) (dismissing participant's UCL claims asserting improper claims handling and failure to promptly pay because the claims handling and payment obligations arose from the ERISA plan); *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d 880, 930 (C.D. Cal. 2012) (dismissing providers' claim under UCL and Knox-Keene Act as completely preempted by ERISA).

Here, Plaintiff asserts that § 1371.4 and § 10112.7 create obligations to pay under a contract implied in law and that they are enforceable through the UCL. (Doc. 1-2 at 15 (¶¶ 54-55)). These two statutes expressly require a connection to the ERISA plans for there to be any obligations to reimburse pursuant to the statutes. *See* CAL. HEALTH & SAFETY CODE § 1371.4(b) ("A health care service plan, or its contracting medical providers, shall reimburse providers for emergency services and care provided *to its enrollees* . . . .") (emphasis added); CAL. INS. CODE § 10112.7(a) (applying only where a health insurance policy "provides or covers any benefits with respect to services in an emergency department of a hospital"). And Plaintiff acknowledges as much by alleging that the patients at issue were "enrolled in [Cigna's] health service plans or insurance policies, for which [Cigna] assumed the financial risk" and that the benefit allegedly conferred on Cigna was "providing medically necessary emergency and post-stabilization care to the Patients who are members and/or insureds of [Cigna's] health service plans and/or health insurance policies." (*Id.* at 14 (¶¶ 49, 52)). Any duty or liability under Plaintiff's claims based on these statutes "exist here only because of [Cigna's] administration of ERISA-regulated benefit plans" and those claims are completely preempted. *Cleghorn*, 408 F.3d at 1226-27.

In sum, all of Plaintiff's claims based on claims involving patients covered under

ERISA Plans are completely preempted under *Davila*. But, even if some of Plaintiff's claims were found to be independent of the ERISA plans, the Court evaluates only "whether an individual *claim* is completely preempted," and, "[i]f it is, the existence of other nonpreempted claims will not save the case from federal removal jurisdiction." *Melamed v. Blue Cross of California*, 557 F. App'x 659, 661 (9th Cir. 2014).

### C. Plaintiff's motion to remand does not provide any basis to find otherwise.

Plaintiff's argument that ERISA does not completely preempt its claims largely consists of extended quotes from *Marin General Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 943 (9th Cir. 2009), and *Catholic Healthcare West-Bay Area v. Seafarers Health & Benefits Plan*, 321 F. App'x 563 (9th Cir. 2008), without much explanation for how these cases apply to Plaintiff's specific claims.

For example, Plaintiff's citation to *Catholic Healthcare West-Bay Area v. Seafarers Health & Benefits Plan*, 321 F. App'x 563 (9th Cir. 2008), is completely unhelpful to its argument. Not only is that case unpublished and nonbinding, it does not apply the correct complete-preemption analysis at all. *See id.* at 564 (applying a "relationship test" from the express-preemption provision without any reference to the two-part *Davila* test). It does, however, provide some useful points of instruction though what it got demonstrably wrong. For example, it holds that, while the plaintiff could have asserted its claims as an assignee, it did not, so its claims were independent state law claims. *Id.* But, as *Davila* made express, the first question for purposes of complete preemption is not whether the plaintiff *did* assert ERISA claims but whether it, "at some point in time, *could have* brought [its] claim under ERISA." 542 U.S. at 210. If complete preemption is at issue at all, it is because the plaintiff attempted to avoid ERISA by asserting state-law claims, and the purpose of complete preemption is to enforce the Congressional intent to make the ERISA enforcement mechanism the exclusive mechanism to do so. Simply saying that the Complaint does not assert ERISA claims despite plaintiff's ability to do so does not render those claims immune from

complete preemption. *See Fossen*, 660 F.3d at 1109 (noting that completely-preempted claims could have been brought under ERISA as well as state law); *Melamed*, No. CV 11-4540 PSG FFMX, 2011 WL 3585980, at *7.

The other thing the *Catholic Healthcare* case does—as Plaintiff does here (doc. 19 at 13)—is erroneously rely on *The Meadows v. Employers Health Ins.,* 47 F.3d 1006 (9th Cir. 1995), for the proposition that "ERISA does not preempt 'claims by a third-party who sues an ERISA plan not as an assignee of a purported ERISA beneficiary, but as an independent entity claiming damages.'" *Cath. Healthcare W.-Bay Area*, 321 F. App'x at 564. The Ninth Circuit, however, has since clarified that "*The Meadows* does not stand for the principle that all state law claims by a third-party provider fall outside the scope of ERISA preemption"; rather, "[t]he reference in *The Meadows* to 'independent state law claims' means claims 'independent' of an ERISA plan, not claims arising from an 'independent' source of law." *Bristol SL Holdings, Inc. v. Cigna Health & Life Ins. Co.*, 103 F.4th 597, 606 (9th Cir. 2024). "The claims in *The Meadows* were independent because there was no operative ERISA plan," and "*The Meadows* stands for the proposition that ERISA preemption does not apply when state law claims are triggered by the complete lack of any ERISA plan." *Id.* Although *Bristol* was addressing express preemption, which overlaps with, but is not necessarily coextensive with, complete preemption, *The Meadows* was addressing complete preemption on a motion to remand, so the *Bristol* opinion clarifying what constitutes "independent" claims in a way consistent with *Davila* is relevant.

Indeed, this is the problem with Plaintiff's assertion that its "claims for breach of implied-in-fact contract, breach of implied-in-law contract, unfair business practices (violation of business and professional code § 17200 et seq.), quantum meruit and restitution based on quasi-contract/unjust enrichment are independent because they are in no way based on an obligation under an ERISA plan, and would exist whether or not an ERISA plan existed." (Doc. 19 at 13). This is not a situation, as Plaintiff contends, like Cigna being "bound by a written or implied contract with a copier leasing

company." (*Id.* at 14). Cigna is not obtaining its copier leases through conduct it only has an obligation to perform as part of its ERISA Plan administration duties. Unlike a dispute with a copier leasing company, Plaintiff's claims solely involve Cigna's alleged actions during pre-service claim administration of ERISA-governed Plans and its obligations to Plaintiff's patients under the ERISA plans. (*See* doc. 1-2 at 13 (¶¶ 38-41), 14-15 (¶¶ 49-50, 53-55), 16-17 (¶¶ 58-60), 18 (¶¶ 67-71), 19 (¶¶ 76-77)). The claims would not, in fact, exist without the Plans. Moreover, several of Plaintiff's claims are essentially identical to ones the Ninth Circuit and subsequent courts have found to be completely preempted. *See Cleghorn*, 408 F.3d at 1227; *Samaan*, No. CV 20-4332-DMG (GJSX), 2021 WL 2792307, at *4. Plaintiff's claims are not "independent" of ERISA simply because they are facially alleged in terms of "independent state law" claims. *See Davila*, 542 U.S. at 214; *Fossen*, 660 F.3d at 1110-11; *Bristol SL Holdings, Inc.*, 103 F.4th at 606.

Plaintiff's reliance on *Marin General* is likewise unhelpful because it is so factually distinguishable from this case. The court in that case explained that the provider had alleged that it had received everything it was entitled to receive under the ERISA plans and was specifically seeking additional payments based on express oral contracts to pay 90% of the hospital charges. 581 F.3d at 943-44. As a result, the court concluded that it was not a claim that could have been brought under § 1132(a)(1)(B). *Id.* at 948. It then concluded that oral promises created a separate and independent contract that would exist regardless of whether the ERISA plan at issue did. *Id.* at 950.

Plaintiff, however, does not allege an express contract that would exist regardless of whether the ERISA plan at issue existed. It alleges (1) a contract implied by Cigna's conduct in administering the ERISA Plan (First Cause of Action for Breach of Implied-In-Fact Contract), (2) obligations allegedly created under state law due to Cigna's conduct in administering the ERISA Plans (Fourth and Fifth Causes of Action for *Quantum Meruit*/Quasi-Contract), and (3) alleged statutory obligations to administer and pay under the ERISA Plans in a certain way (Second and Third Cause of Action

for Breach of Implied-in-Law Contract and Unfair Business Practices under the UCL). All these claims require the existence of the ERISA Plans and Cigna's obligations and duties thereunder, and indeed Plaintiff alleges those obligations as part of each of those counts. (*See* doc. 1-2 at 13 (¶¶ 38-42) (alleging Plan administration conduct made Plaintiff believe there was a contract for payment); *id.* at 8-9 (¶¶ 20-21), 10 (¶ 25), 14 (¶ 50), 15 (¶¶ 54-55, 58), 16 (¶ 60) (asserting claims based on statutes requiring the existence of and obligations under plans or policies); *id.* at 18 (¶ 71), 19 (¶ 77) (alleging that Cigna was benefitted because it was obligated to pay for or provide the services)).[2]

Further, *Marin General* only discussed whether the claims in that case were cognizable on the facts of that case under § 1132(a)(1)(B). *See* 581 F.3d at 949. Complete preemption, however, applies to the entire ERISA enforcement mechanism. *See Fossen*, 660 F.3d at 1108. Plaintiff's claims in this case—far different from those in *Marin General*—could have been asserted under ERISA. Also, Plaintiff does not allege that it received everything the Plans provide, specifically alleging that Cigna had not paid at all for services to several patients, had failed to properly identify patient responsibility under the Plans, and had improperly delayed payments. (Doc. 1-2 at 12 (¶ 35), 15 (¶ 55), 19 (¶ 79)).

[2] Plaintiff's citation to *Bell v. Blue Cross of California*, 131 Cal. App. 4th 211 (2005), in its motion to remand makes this particularly clear because that case found a viable *quantum meruit* claim based only on the defendant's statutory duty to pay for emergency services under § 1371.4. *Id.* at 221 (noting that the Restatement of Restitution allowed restitution where a person "performed the duty of another by supplying a third person with necessaries" and "the things or services supplied were immediately necessary to prevent serious bodily harm to or suffering by such person"). In effect, this is simply another attempt to improperly use a state-law cause of action to apply these state statutes to an ERISA Plan, which, if they are in fact applicable, could be done through an ERISA claim. *See Cleghorn*, 408 F.3d at 1227. Further, because *quantum meruit* and quasi-contract "describe the same theory of recovery and require proof of the same elements, the two claims are one and the same," *McIlwain v. Brown*, No. CV 18-5275-DMG (SKX), 2020 WL 11232927, at *2 (C.D. Cal. Mar. 24, 2020); therefore, it requires proof of the same obligations as the *quantum meruit* claim, and is preempted for the same reason.

### D. Plaintiff's express-preemption argument is both wrong and irrelevant to its remand motion.

Lastly, Plaintiff includes a separate section asserting that its claims are not "preempt[ed] under Section 514(a)" and applying the express-preemption analysis under that provision. (Doc. 19 at 14). This discussion is irrelevant to Plaintiff's motion to remand because express preemption under § 514(a), codified as 29 U.S.C. § 1144(a), does not affect subject matter jurisdiction. *See Marin Gen. Hosp.*, 581 F.3d at 949. However, Cigna does feel compelled to explain that Plaintiff is wrong that its claims are not preempted under ERISA's express-preemption provision.

Plaintiff relies heavily on the Fifth Circuit's 35-year-old opinion in *Memorial Hospital System v. Northbrook Life Insurance Co.*, 904 F.2d 236 (5th Cir. 1990), and this Court's 30-year-old analysis in *Hoag Mem'l Hosp. v. Managed Care Administrators*, 820 F. Supp. 1232, 1235-37 (C.D. Cal. 1993), relying on it. (*See* doc. 19 at 15-18). Plaintiff also notes that the Ninth Circuit cited *Memorial Hospital* with approval in *The Meadows*. (*See id.* at 18). However, in *Bristol SL Holdings, Inc.*, the Ninth Circuit recently addressed a claim similar to Plaintiff's and came to a different conclusion than *Hoag*.

Specifically, in *Bristol*, the provider had sued the insurer arguing that "[the insurer]'s representations during the verification and authorization calls created enforceable agreements to reimburse [the provider] at a certain percentage of UCR," which the insurer breached by not making those payments. 103 F.4th at 601. In a prior appeal, the court had concluded that the provider had presented sufficient evidence to establish an enforceable contract under California law but had reserved the question of ERISA preemption. *Id.* In a second appeal, the Ninth Circuit addressed the state-law breach of contract and estoppel claims under the two-part "related to" analysis, concluding that the claims were preempted under both the "reference to" and "connection with" parts. *Id.* at 602-605. The court noted that claims related to "improper processing of a claim for benefits" under an ERISA plan were preempted, noting a prior case holding that breach of contract and loss of consortium based on alleged delay in

authorizing treatment were preempted. *Id.* at 603 (citing *Bast v. Prudential Insurance Company of America*, 150 F.3d 1003 (9th Cir. 1998)). In short, "attempting to secure plan-covered payments discussed via phone through the alternative means of state contract law" was attempting to enforce state law in "reference to" the ERISA plan.

The court likewise concluded that the state-law claims based on verification calls had an "impermissible connection with" the ERISA plan because it "unduly intrude[d] on a 'central matter of plan administration,'"—the insurer's "overarching system of verifying out-of-network coverage and authorizing treatment by phone," and making payments later based on the terms of the ERISA plan. *Id.* at 604. "[I]f providers could use state contract law to bind insurers to their representations on verification and authorization calls regardless of plan rules on billing practices, benefits would be governed not by ERISA and the plan terms, but by innumerable phone calls and their variable treatment under state law." *Id.* at 605. As a result, express preemption applies to state-law claims based on Plan administration. *See also Dedicato Treatment Ctr., Inc. v. Aetna Life Ins. Co.*, No. 2:24-CV-03136-CAS-PDX, 2024 WL 3346241, at *6 (C.D. Cal. July 8, 2024) (holding that claims were expressly preempted where "[t]he gravamen of its complaint is that the amount paid by defendant, pursuant to the terms of the Patients' healthcare plans, was less than the reasonable value of services rendered" and "would force courts to adjudicate whether all payments made to out-of-network providers are 'reasonable,' regardless of the terms and rates set forth in patients' plans").

Further, although the Ninth Circuit in *Bristol* did not address *Hoag* directly, it did expressly address both *Memorial Hospital* and *The Meadows* and concluded that they were best understood in their factual context where there were no extant ties to the ERISA plan. 103 F.4th at 606. The Court reasoned that *The Meadows* opinion is best read to have followed the *Memorial Hospital* opinion's conclusion that state-law claims are not preempted where they "arise not 'due to the patient's coverage under an ERISA plan, but precisely because there is no ERISA plan coverage.'" *Id.* at 607 (quoting

*Memorial Hospital* 904 F.2d at 246). In other words, there is no preemption where there is no coverage under an ERISA plan at the time of the alleged conduct. That is not the case here. Quite the contrary, as in *Bristol* and *Dedicato*, Plaintiff's claims arise out of alleged conduct during and after verification and prior-authorization calls and attempt to bind Cigna to supposed promises about claim payments made during that pre-service claim administration instead of applying the terms of the Plan when making payments. Under this recent case law from this Court and the Ninth Circuit, applying significantly more recent Ninth Circuit and U.S. Supreme Court precedent than the three-decade-old cases upon which Plaintiff relies, Plaintiff's claims are expressly preempted.

## III. CONCLUSION

Plaintiff's claims are completely preempted under the *Davila* analysis. If even one claim in an action is completely preempted, the Court has subject matter jurisdiction over the case. As a result, this Court has jurisdiction in this case, and Plaintiff's motion to remand should be denied.

Dated: March 25, 2025

MAYNARD NEXSEN LLP

By: */s/Karen T. Tsui*
KAREN T. TSUI
Attorneys for Defendants
Cigna Health and Life Insurance Company and Cigna Healthcare of California, Inc.

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants Cigna Health and Life Insurance Company and Cigna Healthcare of California, Inc., certifies that, according to the word-processing system used to prepare the document, this brief contains 5,036 words, which complies with the word limit of L.R. 11-6.1.

*/s/Karen T. Tsui*
Of Counsel